Thank you. We're ready to start our final oral argument of the day. 24-8017 Parkhurst v. Shannon. Ms. Cassis. Did I pronounce that right? I hope. Yes. Thank you. You may begin. Good afternoon, your honors, and may it please the court. Layla Cassis on behalf of Appellant Derek Parkhurst. I plan to reserve two minutes for rebuttal. The district court below erred in granting summary judgment to Ms. Stinson on both of Mr. Parkhurst's First Amendment retaliation claims. With respect to the first claim, the district court erroneously erred in holding that a threat of termination cannot constitute an adverse action. On the second claim, the district court erred in applying the so-called checkmate doctrine discussed in dicta in Raquena v. Roberts, which was in clear contradiction with the correct causation standard, which looks only to retaliatory motive as exemplified in Smith v. Mechner. This court should affirm that the but-for causation standard applies. In the alternative, should the checkmate doctrine apply to the second claim, it requires both some evidence and due process to be otherwise satisfied. Here, due process was violated at Mr. Parkhurst's disciplinary hearing because he was denied, one, access to surveillance footage, two, the ability to call critical witnesses, and three, a neutral impartial hearing officer. On the first claim, I note that the first and third elements are not disputed by Ms. Stinson. And of course, a threat of termination would easily chill a prisoner of ordinary firmness from continuing to engage in First Amendment activity. The court has explicitly held that outright termination of a prison job constitutes an adverse action. In Milligan v. Archuleta, it would make little sense to allow the government to threaten what it cannot do outright. And this court has essentially held an intactious that a threat of a civil action is just as chilling as an actual civil action. And we also would like to note that a threat of termination would actually be more chilling than an actual termination in some ways, because the threat endures and can be leveraged repeatedly against the prisoner. Does it matter what the language of the threat is? It wasn't very, it wasn't explicit at all in this case. You're inferring that he was threatening. I can't remember the exact language, but it wasn't get out of here, you're fired. There's two pieces to the analysis here. The first is a legal question, and that's whether a threat of termination constitutes an adverse action. And that's the question that the court can answer here. The second question is a factual question, and that's whether what Ms. Stinson stated rises to the level of a threat of termination. The district court had already held that Mr. Parkhurst had submitted enough evidence in the record that that was a factual dispute that a jury would decide. So in terms of what Ms. Stinson said, there's enough evidence in the record that Mr. Parkhurst essentially understood what was stated was a threat of termination. Didn't the district court conclude that the threat wouldn't have deterred or chilled the activity of Mr. Parkhurst? In other words, didn't the district court already resolve the fact question against your client? District court in analyzing that element looked subjectively to determine whether or not Mr. Stinson would be chilled and stated that because he filed a grievance, he was not actually chilled. And the element is a objective standard. It's whether an ordinary prisoner in this context would be chilled. And here at issue is whether a threat of termination would constitute an adverse action. And there's sufficient evidence in the record that that was a threat of termination. Can we decide on this appeal, the objective aspect of it? It's an objective standard. Can't we reach that here? Absolutely, Your Honor. This court can determine whether a threat of termination in a broader sense can constitute an adverse action. I'm saying whether this threat was objectively chilling. The court can look at the facts in the record here, and the court can determine whether there's sufficient evidence to create a dispute of fact. And here Mr. Parkhurst testified at his deposition that he understood that that was a threat of termination based on the context, the tone. And so there's sufficient evidence in the record that Mr. Parkhurst understood that that was a threat of termination, such that that's a question for the jury to decide. But it's not his perception of the threat. It's whether the threat would chill a person of ordinary firmness in pursuing the complaint. Of course. And so we don't care about Parkhurst's subjective reaction. It's what an objective observer would have reacted to. Of course. And that merely colors the inquiry that at least some prisoners would understand that to be a threat of termination. I'll also point to the court that a threat of termination in the public employment context constitutes an adverse action. And there is no reasonable reason stated here why that understanding would not apply in the prison context. Can I, Ms. Kessler, can I ask about that and push back on that a little bit? Does this, and let me start by asking this, do the circumstances involving this kitchen job bear on this objective inquiry of chilling an inmate of ordinary firmness from making a report? In your brief, you make a very eloquent, very persuasive argument about the importance of prison jobs. People need this. Well, the only fact that I, in reading the deposition testimony in the summary judgment record is that he had worked at this job for four months. Some of the things that I don't know that a district court, even reasonably considering the evidence in light most favorable to the plaintiff, would have any basis for speculating is, did everybody at this prison get a job? Was the kitchen job the bottom of the barrel, so to speak? Did he get this because he put in for being a carpenter and everybody wanted to be a carpenter and only the losers really got to be a kitchen worker? Was this boss, Miss, I guess, Miss Denson, was she someone that nobody ever wanted to work for and poor parkers got assigned to her? So in light of the dearth of evidence about the circumstances, whether this is an attractive or unattractive job, do those bear on the objective inquiry? I think of the inquiry in two steps. And the first is the initial legal test. And I don't think of that as taking into account of what kind of job it is. And you think of that in the employment context, in the public employment context. You don't ask, is this a government janitor or is this a government high level official and whether being fired from that job? Maybe we should. I'm uncomfortable with your rigid division between the legal issue and the factual issue. Judge Bacharach pointed out this is very different from your usual job firing. When you're fired, you don't work for that employer anymore. Here you have an institution that'll do something for you and they want to get useful work out of these people. So being fired from that job doesn't mean it. There's also the question of the ambiguity of it. Yes, jury might decide, yeah, we think by preponderance of the evidence, this was a threat to fire, but it was an obscure threat or could be viewed as an obscure threat. And that's not as forceful. That's not as fear inspiring as a direct threat that you're going to be fired. So depending on how severe the threat is, how clear it is, what the consequences of it would be, may make a difference regarding whether a reasonable person would be deterred from it. So I deal with that as you may, but particularly given Judge Bacharach's insights just now, I think it's more complicated than just saying is a threat of firing. I'm talking too much, go ahead and respond. I think that's a great point. And when you look at the case law, Banton Books, it just talks about a threat of invoking legal sanctions. It doesn't discuss what those legal sanctions were. If you look at Tatchius, it's a threat of a civil action, but it doesn't discuss what kind of civil action would be at issue. And if you look at Worrell, it talks about a threat of criminal prosecution, but it doesn't say what you would be charged with, jaywalking or murder. And so it doesn't matter what the actual context of the threat was. The preliminary question is whether a threat in of itself, whether it's a direct threat, you are going to be fired or a more indirect threat here constitutes an adverse action. And then it's up to a jury to decide whether or not they find that sufficiently to be a threat of an adverse action. I'd really like to discuss the second claim, if I may, whether Raquina applies or not. And I want to flag for the court that the first and second elements are not disputed by Ms. Stinson here. The lodestar of a causation inquiry is motive. In every other type of First Amendment retaliation claim, we're always looking at what the official's motive was, whether they would have taken the adverse action absent a retaliatory motive. Here, the question normally would be whether Ms. Stinson would have filed the disciplinary charge absent a retaliatory motive, not whether Ms. Stinson would have filed the disciplinary charge absent there being some evidence and due process satisfied at the hearing. The plain text of Worrell and the First Amendment retaliation claims on this element merely provide that Mr. Parker's has to show that the defendant's adverse action was substantially motivated as a response of the plaintiff's exercise of constitutionally protected conduct. Ms. Stinson is always welcome to argue to a jury that she would have made the same decision to file the charge absent an impermissible motive. And I want to quickly touch on why the checkmate doctrine of the 8th and 11th circuits, which is a minority decision, is fundamentally incompatible with the normal causation standard and is not an application of the normal but for causation standard. Maybe the minority view, but you've got to explain why we shouldn't follow our precedent that did apply the checkmate doctrine. First, the doctrine looks exclusively to whether due process was satisfied at the hearing with no inquiry as to why the official filed the charge in the first place. So you can have a fully retaliatory charge and that passes due process muster. And that doctrine would say that that prisoner doesn't have a claim. And the second point is that you're criticizing what we said. Why don't we have to follow our precedent that relied on the checkmate doctrine? You can make a good argument for en banc review on that ground, but this panel can't help you. And that's why that that discussion in Raquena is completely dicta. If you look closely at the opinion, at the opinion, you'll see that the court explicitly provides that collateral estoppel had already prevented the court from relitigating that First Amendment claim. And collateral estoppel is a threshold inquiry in the same way that the court would analyze standing or mootness. And because the Kansas Court of Appeals had already reviewed that prisoner's First Amendment retaliation claim and looked at all three elements and held that there was no evidence of a retaliatory motive, the 10th Circuit cannot, the district court and federal courts cannot come and relitigate the claim and state that he also fails on one of the elements because the state, the claim was already relitigated, litigated by the Kansas Court of Appeals. You raise a pretty fundamental issue. If we state alternative grounds for ruling, either ground could be considered dictum. The panel didn't have to address collateral estoppel because it relied on the checkmate doctrine. So the collateral estoppel part of our opinion is just dictum in that regard. How do you decide which of the alternatives is dictum or are they both dictum? Are we just wasting time if we give more than one element? Absolutely not. And typically a court will look at multiple elements of a claim and say you can't meet element one and in the alternative, you can't meet element two. But collateral estoppel is different because it's not an element of the claim. It's a more broader understanding. It's a threshold inquiry, the same way you would look at standing, mootness and ripeness. I'll bet I could find cases of ours where collateral estoppel was raised as a defense and we don't address it because we say you lose on the merits. And I'm happy to provide case law that basically asserts that that's a threshold inquiry. From the Ninth Circuit, I have offshore sportswear and that's 114 F3 848. If they're not in a brief, you can supplement it with a 28-J letter. You don't need to recite the cases here. Absolutely. And to go back to my second point, the doctrine would allow an official to file disciplinary charge for minor infractions a prisoner may have technically committed and use that as a pretext for retaliation. With that, I see my time is out. I respectfully request that this court reverse on the Grants of Summary Judgment. Thank you, counsel. Case is submitted. Counselor excused. Court will be in recess. Oh, I'm sorry. It's about time I cut you off though, Judge Dr. Epps. So, go ahead. I apologize. Did you want to ask a question? No, Mr. Miller, I don't think has had a chance. Oh, my gosh. Ms. Hassett doesn't object to Mr. Miller not talking, right? Gee, and I've sat on one fewer cases than the others, and my mind is already gone. Mr. Miller, would you like to say a few words? Yes, I don't know that they're worth hearing. My name is Timothy Miller. I'm a senior assistant attorney general, and I'm here representing America Stinson, who is a food service worker at a Wyoming prison. There are two claims in this case. The district court correctly granted summary judgment on both of them. The first claim involves an alleged statement to hit the road, if you don't like it, by Ms. Stinson to Mr. Parkhurst in March of 2021. And after making that statement, Mr. Parkhurst went right out and grieved Ms. Stinson for allegedly requiring him to serve bad ranch dressing. And he has made a retaliation claim based on what she said. The second claim is the issuance of a disciplinary write-up by Ms. Stinson, allegedly in retaliation for some information that Mr. Parkhurst had complained about the ranch dressing. I plan to address claim two first because of the court's questions. However, I will spend a moment on claim one. And Judge Bacharach has hit, I think, a principal point in this case on claim one. The second element requires plaintiff to show that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protective activity. We have no description of an injury here anywhere. Well, can I push, can I test that from your perspective for Ms. Stinson? As Ms. Kansas noted, we typically, with public sector employment, some of the cases that she's mentioned, we typically don't talk about, well, was this a job as a sanitation worker? Was it a job that the person really cared about? And we do view the evidence in the life most favorable to the plaintiff. And so we do know that he had worked every day, according to his testimony in his position, I think, every day in the kitchen for four months. So if we view the evidence in the light most favorable to the plaintiff, if we do infer that, well, if you don't like it, you can hit the road, if that was a threat of termination, why couldn't a reasonable fact finder viewing the evidence favorable to the plaintiff reasonably infer that that would chill a person of ordinary firmness? Maybe not a person like Mr. Parkhurst himself, but subjectively. But why isn't the fact that he worked every single day for four months enough to chill a person of ordinary firmness? Well, your honor, I don't think it does. It's a very, it's a vigorous standard for chill the ordinary firmness. And I respectfully submit that what Mr. Parkhurst, in fact, did does provide some evidence as to what a reasonable person would do, whether a reasonable person would be chilled. And in the Shiro case, 510 F 3rd 1204, this court did make reference to the fact that a man who'd been limited in some way in speaking at a city council hearing had continued to speak at city council hearings and had not been inhibited. This court has found that harassing an inmate all night, calling him a dumb Indian as a matter of law was insufficient to chill an inmate or a person of ordinary firmness from engaging in the protected activity. And so based on that authority, a straight comment of this kind. And let me also distinguish this case from Paisley, which is cited by plaintiffs in the supplemental reply. In Paisley, the defendant said, if you file a grievance, I will have you transferred out of the unit. You will lose your job and you will have your ass transferred so far up north that your family won't recognize you when you get back. I think the nature of the comment makes a difference in making a determination as to whether it would chill a person of ordinary firmness. And I don't know that. I don't think the record contains enough information about the performance of this particular position to raise an issue of fact on the point that the court raises. I would just say on claim one, the district court correctly granted summary judgment ruling that the comment by Ms. Stinson would not chill a person of ordinary firmness applying that standard. Now turning to claim two and the questions that the court asked. And I am in the uncomfortable position of suggesting to the court that it asked a bad question. The parties agreed that a due process analysis does not have any place in a retaliation claim. And there's good reason for that. They are entirely separate constitutional provisions under entirely separate amendments. The elements of the claims are entirely different. And most fundamentally, due process only applies if you have a liberty or property interest. That is an underlying requirement. And so to just for us to do process analysis on a retaliation claim without regard to whether due process would even apply in the proceeding seems to me to not make sense. And I would make this point about Requena, which I may not have made strongly enough in the brief. In Requena, there was a Requena one in which a petition for habeas corpus was rejected by the court. There was a due process analysis in Requena one because it was a loss of good time credit under Kansas law that provided a right to that benefit. And so due process did come into play in that case. In this case, it is the Requena standard, which by its express language does not include due process, but in any event follows from but for causation. We are going to have this harassment inevitably at trial. Plaintiff is going to have to show that he would not have been sanctioned. He would not have been written up but for a retaliatory motive. Okay, let me ask you, but can I ask you about that, Mr. Wheeler? Yes. This is one item that I don't think Miss Cass has got to, but it's certainly in her brief. Now, she argues that Requena is inconsistent with Smith v. Mashner. We have precedent in our circuit that when there's an intra-circuit inconsistency of precedential opinions, we abide by the first one with the theory being that the second one was incorrect because no panel can overrule another panel in 2018. And I did join Requena, but there is no reference to Smith v. Mashner. I don't think you had an opportunity in your briefing to explain how Smith v. Mashner can be reconciled with Requena. So, I want to give you a chance because I just am struggling to see whether or not we made a goof up in Requena by overlooking Smith v. Mashner. How can they be reconciled? Well, I think they can be reconciled because Smith v. Mashner recognized the but-for causation test, which I think is what the Requena holding ultimately should flow from. But we didn't certainly say, I wasn't on the court when Smith v. Mashner was decided, but the circuit in Smith certainly didn't say anything that suggested that if the person is punished for an improper motive, no harm, no foul, because they could have been punished because there was evidence, some evidence under Superintendent v. Hill to support the disciplinary infraction. I mean, I don't, that's nowhere in Smith v. Mashner. So, it seems that Requena included that. That's the very point that you're relying on and that the district court relied on. And that seems to be including a requirement that is absent from Smith for the very reasons you just mentioned. In Smith, it was simply but-for causation, not the existence of an additional theory that there was an evidentiary basis for the infraction, even if it was imposed for an improper purpose. Well, Your Honor, to my recollection, the argument about the effect of the disciplinary finding was not raised in Smith v. Mashner. And so, I don't believe... Sorry, what was it? Excuse me. What was it raised? What was it raised as? That the effect of a disciplinary finding against the inmate, to my recollection, was not raised in Smith v. Mashner. It is not entirely on all fours where the court said, we're not going to adopt this rule, and then later on adopted the rule. Did Smith v. Mashner... Let me ask you about Smith v. Mashner. Did the court in Smith v. Mashner say that there was a denial of due process at the hearing because there wasn't, there was deprivation of a witness or something like that? Do you recall if that was the case? I do not recall, Judge. I apologize. I do not apologize. I apologize. I don't recall any way a due process analysis coming up at all in Smith v. Mashner. And so, I would say that the decision in Requena is not inconsistent because it is an additional issue that was not considered in Smith v. Mashner. That is the position that we would take. And Requena, I think, is absolutely governing. There is a case, in terms of Requena somehow being dicta. This court has held that collateral estoppel does not raise a threshold question as to jurisdiction, specifically in Keller Tank Services, which is at 854 F 3rd 1178. A collateral estoppel is an affirmative defense, unlike mootness. The invocation of collateral estoppel to support a position on the merits does not introduce any jurisdictional element into the case. And so, what we have is exactly the point that Judge Hart's made. Nothing is binding if there are alternative rulings because neither one of them is binding. Requena is binding. It does adopt the rule. It does not refer to it as a checkmate rule. But Requena is very clear, and I think it is important to separate the due process analysis. I think the requirement of evidence follows from but for causation. If the sanction is not just found, there is evidence to support it, it would have happened anyway. I do want to make mention of one- Can I ask you a hypothetical question? What if Ms. Denson said, you know, I'm tired of your backtalk on this. You're not complying with my directive that's in subordination. And besides, you're a darn, pick your pejorative for a minority, Hispanic, Jewish, African American, whatever it is. And the person says, Ms. Denson fired me because she specifically included a pejorative reference to my religion, my race, my ethnicity. And then the district court said, well, you were insubordinate. It's a very minimal standard under superintendent versus yield. There just has to be some evidence. There's some evidence that you were insubordinate. So it didn't really matter if Ms. Denson fired you, you know, partly because you were Black or Jewish or Hispanic, because, you know, there was some evidence that you were insubordinate. Is that your understanding of what our law is and should be? Uh, Judge, and I apologize. I can't recall the case. I believe it is the 10th Circuit decision. A noose. An African American inmate, there was a noose somewhere in his vicinity. And I believe the court ruled that that was not sufficient to be chilling. In terms of the court's direct question, we're now kind of blending a couple of, a little bit. I'm wondering, I'm not exactly sure that a claim about some kind of discriminatory comment, does that give rise to something else? I'm not sure about that. But I would say that if insubordinate, if the violation is found, it flows from, but for causation and there is no retaliation claim. And let me just, and I know I'm over time, but. That's my fault. Sorry. No, it's always my fault. The alternative to this is an inmate files a grievance and then it's, everything is fair game. He or she can violate any rule. He or she can smuggle in contraband, can be found to have done it, and he still has a retaliation claim to go forward. So there is an opposing policy view on this. And the last thing, if I could just indulge for 20 seconds. This principle is somewhat like Nieves v. Bartlett, in which the US Supreme Court dealt with retaliatory arrest and said, it is really difficult to determine whether it was this retaliatory motive or the possibility of criminal conduct that motivated this arrest. And so we have determined that you have to show an absence of probable cause, plaintiff does, to go forward with the claim. This is somewhat similar to that. Whereas it is difficult to separate out retaliatory motive from the actual conduct and a rule that if you are found guilty of the conduct and there's evidence to support it, serves the same function as probable cause in the retaliatory arrest content. And unless there are any other questions, I will stop. Thank you, counsel. And it's totally my fault that you went over because if I stuck to my guns and not let you speak at all, it could not have gone over time. I was hoping I could say that my error was harmless. You didn't say anything worthwhile, but you said lots that was worth listening to. Well, thank you. I appreciate that. I was going to express some doubt about the harmless error analysis. And that goes for Ms. Cassis too. Thank you for your presentations here today. Cases submitted, counsel are excused.